UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEREMIAH B. SCHMIDT, JESS TRONSON, and IGNACIO TELLEZ, | Case No. 1:14-cv-00242-BLW |
| Plaintiffs, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| IDAHO DEPARTMENT OF CORRECTIONS, *et. al.*, | |
| Defendants. | |

## INTRODUCTION

The Court has before it IDOC Defendants' Motion for Summary Judgment (Dkt. 21), Defendant Escobedo's Motion for Summary Judgment by Joinder in the IDOC Defendants' Motion for Summary Judgment (Dkt. 24), and Defendants' Motion to Strike a Portion of the Exhibits to the Affidavit of Ryan Earl in Support of Plaintiffs' Objection to Defendants' Motion for Summary Judgment (Dkt. 33). The motions were argued to the Court on December 15, 2015, and supplemental briefs were filed on January 2 and 8, 2016. The motions are now fully ripe, and the Court issues the following memorandum decision and order.

MEMORANDUM DECISION AND ORDER - 1

## ANALYSIS

### I.   Summary Judgment Legal Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." Id. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." Id. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. Id. at 255.  Direct testimony of the non-movant must be believed, however implausible. Leslie v. Grupo ICA, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. McLaughlin v. Liu, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir.

2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor.  *Deveraux,* 263 F.3d at 1076.  The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists.  *Celotex,* 477 U.S. at 324.

Only admissible evidence may be considered in ruling on a motion for summary judgment.  *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed.R.Civ.P. 56(e).  In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered.  *Fraser v. Goodale,* 342 F.3d 1032, 1036-37 (9th Cir. 2003).  If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay.  *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

In order to preserve a hearsay objection, "a party must either move to strike the affidavit or otherwise lodge an objection with the district court."  *Pfingston v. Ronan Engineering Co.,* 284 F.3d 999, 1003 (9th Cir. 2002).  In the absence of objection, the

**MEMORANDUM DECISION AND ORDER - 3**

Court may consider hearsay evidence.  *Skillsky v. Lucky Stores, Inc.,* 893 F.2d 1088, 1094 (9th Cir. 1*990*).

## II.     Motion to Strike

Defendants ask the Court to strike paragraph 3 of Tronson's and Tellez's affidavits. Plaintiffs concede they should be stricken, and the Court will do so.

Defendants also ask the Court to strike a report created by Ada County Detective Jared Watson. The report was originally attached to Attorney Earl's affidavit as a true and correct copy. This is not proper authentication. However, Plaintiffs later filed Detective Watson's affidavit, wherein he authenticated the report. Although Detective Watson's affidavit was filed late, there is no question that the report is what Plaintiffs purport it to be, and Defendants were not at a disadvantage in replying to the report on summary judgment. Under these circumstances, the Court will accept the late-filed affidavit and find that the report is properly authenticated.

The report is also admissible under Federal Rule of Evidence 803(8) as report Detective Watson was required to make as part of his investigation. Moreover, the statements attributed to Tramel and Escobedo in the report are not hearsay because they are statements of a party opponent. Additionally, to the extent Tramel refers to statements made by Escobedo, they are not being offered for the truth of the matter asserted, and therefore not hearsay. Accordingly, the Court will deny the motion to strike the report.

## III.    Motion for Summary Judgment

### A.      Blades and Tramel in Their Official Capacity and IDOC

MEMORANDUM DECISION AND ORDER - 4

After an in depth discussion during oral argument, Plaintiffs conceded their claims against IDOC. Accordingly, the claims against IDOC will be dismissed. Similarly, counsel conceded that since Escobedo no longer works for IDOC, there is no evidence of an immediate threat of harm. Thus, injunctive relief against Blades and Tramel in their official capacity – the only potential relief against them in their official capacity – is unavailable. *Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983). Accordingly, the claims against Blades and Tramel in their official capacity will be dismissed as well.

### B.    Failure to Exhaust Administrative Remedies

Defendants argue that Plaintiffs Tronson and Tellez failed to exhaust their administrative remedies. A prisoner must exhaust available administrative remedies before he can bring a prison conditions claim under § 1983. 42 U.S.C. § 1997e. Exhaustion of administrative remedies is an affirmative defense which must be proved by the defendant. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). Here, there is no dispute that Tronson and Tellez did not exhaust their administrative remedies.

However, failure to exhaust administrative remedies which are effectively unavailable does not bar a claim. *McBride v. Lopez*, 807 F.3d 982, 986 (9th Cir. 2015) (*citing Nunez v. Duncan*, 591 F.3d 1217, 1225-26 (9th Cir. 2010)).  Threat of retaliation for reporting an incident renders a grievance process effectively unavailable, and excuses a prisoner from the exhaustion of administrative remedies requirement. *Id*.

The Ninth Circuit has adopted the Eleventh Circuit's "straightforward and conceptually simple" test for determining when a failure to exhaust is excusable because of a threat of retaliation. *Id.* at 987. First, "a prisoner must provide a basis for the court to

**MEMORANDUM DECISION AND ORDER - 5**

find that he actually believed prison officials would retaliate against him if he filed a grievance." *Id*. Second, "he must then demonstrate that his belief was objectively reasonable." *Id.*  To show objective reasonableness, "there must be some basis in the record for the district court to conclude that a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." *Id.*

To prove they are excused from exhausting their administrative remedies because of a threat of retaliation, Plaintiffs cite their deposition testimony and affidavits. Tronson's deposition testimony states that he "was more or less, [] scared from retaliation from officers, and threats from other inmates when you become a rat in the prison system." *Tronson Depo.,* p.143 at 12-14, Dkt. 29-9. Tellez's deposition testimony states that Escobedo told him that he shouldn't speak about what he saw or Escobedo would use Tellez's parole date and friends against him. *Tellez Depo.,* p. 64 at 2-5, Dkt. 29-3. What Tellez saw was Escobedo performing oral sex on Schmidt in his cell. *Id.* at 21-24. Tellez's and Tronson's affidavits make almost verbatim statements, indicating that they feared retaliation from officers Escobedo and Tramel, that Escobedo threatened them "personally sexually assaulting [them]," that Tramel threatened them indirectly through other inmates, and that they "did not make any complaints, file a grievance, or even admit to what occurred until later because [sic] feared retaliation and [they were] concerned about [their] safety and well being beyond what [they] felt daily as an inmate during the

**MEMORANDUM DECISION AND ORDER - 6**

occurrence of these events that are the basis of this lawsuit." *Tellez Aff.,* Dkt. 29-6;

*Tronson Aff.,* Dkt. 29-6.

Much of what is stated in the deposition testimony and affidavits is very general, and unhelpful. Simply indicating that they feared retaliation does not give the Court a basis for finding that they actually believed prison officials would retaliate against them, or that such a belief was objectively reasonable. However, the statements that Escobedo threatened them both by "personally sexually assaulting" them meets both prongs of the test. Sexual assault, which includes sexual threats, by a correctional officer would certainly cause Tronson and Tellez to believe they would be sexually assaulted if they filed a grievance. Moreover, there can be no doubt that a threat of sexual assault is severe, and that it would deter a reasonable prisoner from filing a grievance. Accordingly, under *McBride*, Tellez and Tronson were excused from exhausting their administrative remedies.

### C.    Tronson – Mental or Emotional Distress

Defendants next argue that Tronson cannot recover for mental or emotional distress. "No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). The term "sexual act" means:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

      (B) contact between the mouth and the penis, the mouth and the
         vulva, or the mouth and the anus;

      (C) the penetration, however slight, of the anal or genital opening of
         another by a hand or finger or by any object, with an intent to
         abuse, humiliate, harass, degrade, or arouse or gratify the sexual
         desire of any person; or

      (D) the intentional touching, not through the clothing, of the
         genitalia of another person who has not attained the age of 16
         years with an intent to abuse, humiliate, harass, degrade, or
         arouse or gratify the sexual desire of any person.

18 U.S.C. § 2246(2). Tronson's only allegations of a physical injury or sexual act are that Escobedo rubbed his chest and grabbed his penis over his clothes. *Brassey Aff.,* Ex. G,. pp. 45-46. This does not meet the definition of physical injury or sexual act as outlined in the statute. Accordingly, Tronson's claim for mental or emotional distress must be dismissed.

### D.    Section 1983 Claims Against Blades

Randy Blades is the warden at the Idaho State Correctional Institution ("ISCI") where plaintiffs are housed. "Section 1983 suits do not impose liability on supervising officers under a respondeat superior theory of liability." *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir.2003). "Instead, supervising officers can be held liable under section 1983 only if they play an affirmative part in the alleged deprivation of constitutional rights." *Id.* (Internal citations and quotations omitted). Because it is rare that a supervisor will be personally involved in the same way as individual officers, to be held liable, a supervising officer must "set in motion a series of acts by others . . ., which he knew or reasonably should have known, would cause others to inflict the

**MEMORANDUM DECISION AND ORDER - 8**

constitutional injury." *Id.* (Internal citations and quotations omitted); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir.1991). "Supervisory liability is imposed against a supervisory official in his individual capacity for [1] his own culpable action or inaction in the training, supervision, or control of his subordinates, [2] for his acquiescence in the constitutional deprivations of which the complaint is made, or [3] for conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991) (internal citations and quotations omitted).

The only substantive reference to Blades in the Complaint is the assertion that he is the Warden at ISCI, and that he is "responsible for and has a duty to protect inmates entrusted into his care, as well as supervise and train those who are employed to work under him." *Complaint,* ¶ 3.5, Dkt. 1. Plaintiffs offered no other evidence in opposition to the motion for summary judgment.

Blades, however, has provided the Court with his affidavit, indicating that "[n]one of the Plaintiffs ever informed [him] that they were being sexually abused, harassed and/or assaulted by Defendant Escobedo." *Blades Aff.,* ¶ 6, Dkt. 21-8. He further indicates that he never witnessed Escobedo sexually abusing, harassing or assaulting Plaintiffs or any other inmates. *Id.* at ¶ 7. Blades further explains that when another inmate informed him that an unidentified correctional officer (later determined to be Escobedo) had engaged in sexual activity with Schmidt, he immediately forwarded the information to the Special Investigations Unit, and Escobedo was placed on

**MEMORANDUM DECISION AND ORDER - 9**

administrative leave. *Id.* at ¶¶ 8-10. Escobedo resigned and never returned to work. *Id.* at ¶¶ 11-12.

Under these circumstances, there is no factual dispute that Blades was not culpable in his actions or inaction, that he did not acquiesce in the alleged constitutional deprivations, and that he did not act with reckless or callous indifference to the rights of others. When he heard about the allegations, he took the proper steps to address them. Accordingly, the claims against Blades will be dismissed.

### E.     Section 1983 Claims Against Tramel

"A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Stevenson v. Koskey,* 877 F.2d 1435, 1438 (9th Cir. 1989). Viewed in the light most favorable to Plaintiffs, evidence presented to the Court creates a genuine issue of material fact as to whether Tramel participated in the alleged sexual assaults by Escobedo or failed to report or otherwise prevent Escobedo's actions. Ada County Detective Jared Watson interviewed Tramel while investigating complaints against Escobedo. In his report of that interview, Detective Watson states that,

> Tramel said he has told Escobedo . . . that he is too friendly with inmates and he needed to watch it. Tramel said . . . Escobedo has been around Schmidt more then [sic] any other inmate. Tramel said he didn't know of anything inappropriate going on between them because he has told Escobedo from day one that "if you ever do anything inappropriate don't tell me about it because I don't want to be involved."

* * *

**MEMORANDUM DECISION AND ORDER - 10**

> Tramel told me he told Escobedo about the sexual rumors that were
> going around the yard and Escobedo would tell Tramel he wasn't
> gay and nothing was happening.
>
> * * *
>
> I asked Tramel to explain why he thought Escobedo was being too
> friendly with Schmidt and he said he thought Escobedo was treating
> him more like a friend then [sic] an inmate.
>
> * * *
>
> Tramel went on to tell me he had other conversations with Escobedo
> at his house . . . when he would tell Escobedo he didn't want to have
> anything to do with what he was doing at the prison. Tramel said he
> would tell Escobedo about the sexual rumors and that Escobedo was
> being accused of bringing contraband into Schmidt.

*Watson Aff.,* Ex. 9, (Watson Report), Dkt. 41.

Prison officials have a duty to protect inmates from violence, which would include sexual assault. *Farmer v. Brennan,* 511 U.S. 825, 833-34 (1994). Although not all injuries suffered by a prisoner "translate[] into constitutional liability for prison officials responsible for the victim's safety," prison officials violate the Eighth Amendment when two requirements are met. *Id.* First, the deprivation must be, objectively, "sufficiently serious." *Id.* Second, the official must have a "sufficiently culpable state of mind." *Id.* In prison conditions cases, that means "deliberate indifference" to the prisoner's health or safety. *Id.* Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, Plaintiffs assert that Escobedo sexually assaulted them. *Complaint,* Dkt. 1; *Tellez Aff.,* Dkt. 29-6; *Tronson Aff.,* Dkt. 29-6. There is no doubt that sexual assault is an objectively serious deprivation of one's constitutional rights. Additionally, Watson's report suggests that Tramel knew Escobedo was too "friendly" with inmates, that there were "sexual rumors," and that he purposely turned a blind eye to whether Escobedo was sexually assaulting inmates. This shows a sufficiently culpable state of mind. Thus, there is evidence that Tramel was aware of facts from which he could infer that Escobedo was sexually assaulting plaintiffs, and he drew that inference but deliberately chose to do nothing about it. Under these circumstances, Plaintiffs have asserted sufficient facts to support their Eighth Amendment claims against Tramel.

Finally, Tramel is not entitled to qualified immunity. "Qualified immunity serves to shield government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir.2005) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has set forth the following two-pronged inquiry to resolve all qualified immunity claims:

> First, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right? Second, if so, was that right clearly established? The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable

> officer that his conduct was unlawful in the situation he confronted.
> This inquiry is wholly objective and is undertaken in light of the
> specific factual circumstances of the case.

*Id*. (internal quotations and citations omitted). Thus, a district court should "concentrate

at the outset on the definition of the constitutional right and . . . determine whether, on the

facts alleged, a constitutional violation could be found . . . ." *Billington v. Smith*, 292 F.3d

1177, 1183 (9th Cir.2002). If a constitutional violation can be found, the Court then

decides whether the violation was the source for clearly established law that was

contravened in the circumstances of the case.

Here, as discussed above, a constitutional violation can be found – there is

evidence that Tramel was aware of facts from which he could infer that Escobedo was

sexually assaulting plaintiffs, and he drew that inference but deliberately chose to do

nothing about it. The Court therefore turns to whether that constitutional right was clearly

established. "This is a two-part inquiry: (1) Was the law governing the state official's

conduct clearly established? (2) Under that law could a reasonable state official have

believed his conduct was lawful?" *Estate of Ford v. Ramirez-Palmer,* 301 F.3d 1043,

1050 (9th Cir.2002). "However, the relevant, dispositive inquiry in determining whether

a right is clearly established is whether it would be clear to a reasonable officer that his

conduct was unlawful in the situation he confronted." *Id*. at 202 (Internal citations and

quotations omitted). Here, it would be clear to a reasonable officer that allowing another

officer to sexually assault inmates is unlawful. Accordingly, the Court will deny

summary judgment on the claims against Tramel in his individual capacity.

### F.    Section 1983 Claim Against Escobedo

<span style="font-variant:small-caps">Memorandum Decision And Order</span> - 13

Escobedo merely joined in the other defendants' motion. As explained above, Tronson's and Tellez's claims are not dismissed for failure to exhaust administrative remedies, but Tronson's claim for mental or emotional distress is dismissed. Escobedo made no other substantive arguments in his joinder brief, and he conceded at oral argument that factual questions remain as to plaintiffs' constitutional claims. Accordingly, the claims against Escobedo remain, except Tronson's claims for mental or emotional distress.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment (Dkt. 21) is **GRANTED in part** and **DENIED in part** as explained above. All claims against IDOC and Blades are dismissed. The claims against Tramel in his official capacity are dismissed. Tronson's claims for mental and emotional distress are dismissed. The claims against Tramel in his individual capacity remain.

2. Defendant Escobedo's Motion for Summary Judgment by Joinder in the IDOC Defendants' Motion for Summary Judgment (Dkt. 24) is **GRANTED in part** and **DENIED in part**. Tronson's claims for mental and emotions distress. All other claims against Escobedo remain.

3. Defendants' Motion to Strike a Portion of the Exhibits to the Affidavit of Ryan Earl in Support of Plaintiffs' Objection to Defendants' Motion for Summary Judgment (Dkt. 33) is **GRANTED in part** and **DENIED in part**. Paragraph 3

of Tronson's and Tellez's affidavits is stricken, but Detective Watson's report is admissible.

DATED: February 16, 2016

B. Lynn Winmill
Chief Judge
United States District Court